IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELVIN DWIGHT LEWIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-3107-M-BN |
| | § | |
| LSG SKY CHEFS, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This case, in which Plaintiff Kelvin Dwight Lewis is proceeding *pro se* and *in forma pauperis*, *see* Dkt. No. 7, has been referred to the United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b). Defendant LSG Sky Chef has moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 16. Plaintiff has filed a response [Dkt. No. 19], and Defendant has filed a reply [Dkt. No. 22]. The undersigned magistrate judge now issues the following findings of fact, conclusions of law, and recommendation.

**Background**

Plaintiff filed his lawsuit on August 29, 2014. *See* Dkt. No. 1. After the Court received Plaintiff's responses to interrogatories issued September 2, 2014, *see* Dkt. Nos. 9 and 10, service was ordered on September 15, 2014, *see* Dkt. No. 11. Defendant was served on September 29, 2014. *See* Dkt. No. 14. On October 10, 2014, Plaintiff filed additional responses to the Court's interrogatories. *See* Dkt. No. 15. And Defendant

filed its motion to dismiss on October 20, 2014. *See* Dkt. No. 16.

Plaintiff complains about two distinct wrongs – alleged discrimination based on race or color and, separately, his alleged wrongful termination. *See* Dkt. No. 1 at 1; *see also* Dkt. No. 10 at 2-3 ("The nature of the Lawsuit are two claims ... One[,] Discrimination based on Race/Color ... Two[,] The Wrongful Termination[.]"); *id.* at 5-6 (asked to "state the dates on which the alleged acts occurred," Plaintiff responded, in part: "Discrimination based on Race/Color February 6, 2013"; "The Wrongful Termination April 5, 2013").

As to his discrimination claim, Plaintiff – who states that he is a truck driver, *see* Dkt. No. 1 at 10 – claims he was not allowed to "shift bid for the AFEHI driver position for the month of February 11/February 12, 2013." Dkt. No. 10 at 2; *see also* Dkt. No. 19 (Plaintiff's reply brief) at 3 ("The employment discrimination happen[ed] in the month of February, 2013 at the time for shift bid for the AFEHI Driver position...."). He states that a supervisor named Kyle told him he "could not bid for a shift schedule position" because he "was a part time position driver." Dkt. No. 10 at 2. But Petitioner states a similarly situated white co-worker was placed on the bid sheet. *See id.* at 2, 10.

As to his claim of wrongful termination, Plaintiff contends that he was terminated after failing an alcohol test on March 26, 2013. *See id.* at 3. Plaintiff claims that the reason that he failed the test was "because[ he] had just finished using some mouthwash ... before reporting to work...." *Id.* He states that the test came back positive on April 4, 2014 and that, as a result, he "was terminated immediately." *Id.*

Plaintiff principally alleges that, in terminating him, Defendant violated its "policy and MNA policy and maybe the DOT alcohol [testing.]" *Id.* But he also claims that, the day after his positive test was confirmed – April 5, 2014 – he overheard a supervisor make a racist comment. *See id.* at 10. He expands on this allegation in his response to the motion to dismiss, in which he states that he overheard a supervisor, Lyon Plumor, "use[] the 'N word.'" Dkt. No. 19 at 3. More specifically, Plaintiff states that he heard Plumor state "another Fired N[ig]ger." *Id.* Plaintiff further states that Plumor

> became very uncomfortable around me, because he knew that I had heard him make the racist comment. The supervisor then ask[ed] me to sign the employee performance record sheet. I refused because when he had signed it, he put the wrong date April 15, 2013 on the sheet. The witness signature date April 5, 2013 which is the correct date.

*Id.* at 3-4.

Plaintiff invokes Title VII of the 1964 Civil Rights Act and Chapter 21 of the Texas Labor Code as the basis for his lawsuit.

The undersigned concludes that Defendant's motion to dismiss [Dkt. No. 16] should be granted in part and denied in part. Plaintiff's claim that he was discriminated against with regard to the opportunity to bid on a particular shift should be dismissed. But Plaintiff's claim that he was terminated on the basis of his race should be allowed to proceed.

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To

state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiff must allege more than labels and conclusions, and, while the Court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss," under *Twombly* and *Iqbal*, Plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby,*

-4-

*Miss.*, 574 U.S. \_\_\_, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *See Katrina*, 495 F.3d at 205. And, while the Court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), the pleadings here also include Plaintiff's responses to the Court's interrogatories, *see* Dkt. Nos. 10 and 15, which "become part of a plaintiff's pleadings," *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)).

"Because Plaintiff is proceeding *pro se*, the Court liberally construes his Complaint with all possible deference." *Muthukumar v. Univ. of Tex. at Dallas*, No. 3:10-cv-115-B, 2010 WL 5287530, at *2 (N.D. Tex. Dec. 27, 2010) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see Jackson v. Roche*, Nos. 7:04-cv-133-O & 7:02-cv-111-R, 2008 WL 2579677, at *4 (N.D. Tex. June 27, 2008) ("Because Plaintiff filed his complaint as a *pro se* litigant, this Court is obligated to construe the complaint liberally." (citations omitted)); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("Although the Court and the parties should liberally construe *pro se* pleadings, such a liberal construction does not require that the Court or a defendant create causes of action where there are none." (footnote omitted)).

Plaintiff's invocation of Chapter 21 of the Texas Labor Code, *see* Dkt. No. 10 at 4, does not alter how the Court will address his allegations. As this Court has noted,

-5-

> One of the purposes behind chapter 21 is to provide for the execution of the policies embodied in Title VII ... and the Age Discrimination in Employment Act (ADEA), and their subsequent amendments, so that the investigation and resolution of employment discrimination claims may be handled at the state level. Accordingly, the Court uses a federal evidentiary framework when interpreting chapter 21.

*Allen v. Solo Cup Co.*, No. 3:05-cv-848-R, 2006 WL 1949455, at *4 (N.D. Tex. July 13, 2006) (citations omitted); *see also Khalfani v. Balfour Beatty Communities, L.L.C.*, No. 14-50320, ___ F. App'x ___, 2014 WL 7229499, at *1 n.1 (5th Cir. Dec. 18, 2014) (per curiam) ("The legal framework governing claims under both [Chapter 21 of the Texas Labor Code and 42 U.S.C. § 1981] is the same as for claims brought under Title VII." (citations omitted)); *accord Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.*, 698 F. Supp. 2d 730, 741 (S.D. Tex. 2010); *Johnson v. City of Houston*, 203 S.W.3d 7, 11 (Tex. App. – Houston [14th Dist.] 2006, pet. filed). And the United States Supreme Court has recently made clear that "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' FED. RULE CIV. PROC. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson*, 135 S. Ct. at 347.

**Analysis**

Title VII, as applicable here, makes it unlawful for an employer to discriminate against an individual based on race. *See* 42 U.S.C. § 2000e-2; *Thornton v. Dallas Indep. Sch. Dist.*, No. 13-cv-3012-P, 2014 WL 46398, at *3 (N.D. Tex. Jan. 6, 2014). And claims under Title VII are analyzed through the framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See McCoy v. City of*

*Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Under that framework, a plaintiff must establish a prima facie case of discrimination before the case may proceed. *See id.*

To establish a prima facie claim of racial discrimination, a plaintiff must show that he (1) was a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of his protected class or that others outside of his protected class and similarly situated were treated more favorably. *See id.* The United States Court of Appeals for the Fifth Circuit has cautioned, however, that a plaintiff is not required to make a showing of each prong of the prima facie test at the pleading stage. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). While, here, Plaintiff "is not required to plead a prima facie case based on discrimination ... at the pleading stage for purposes of Rules 8 and 12(b)(6), he must set forth allegations that would enable the court to reasonably infer that his employer or employment agency discriminated against him in violation of Title VII ." *Thornton*, 2014 WL 46398, at *3 (quoting *Nieman v. Hale*, No. 3:12-cv-2433-L, 2012 WL 3204990, at *4 (N.D. Tex. Aug. 8, 2012)) (internal citation and quotation marks omitted); *see also Raj*, 714 F.3d at 331 ("Raj's complaint and speculation did not allege any facts, direct or circumstantial, that would suggest LSU's actions were based on Raj's race or national origin or that LSU treated similarly situated employees of other races or national origin more favorably. Because Raj has failed to raise his right to relief above the speculative level, we affirm the district court's dismissal of Raj's complaint under Rule 12(b)(6) for failure to state a claim." (citation and internal quotation marks and

bracket omitted)).

Plaintiff's shift-bid claim

As to this claim, Plaintiff has merely alleged that, in February 2013, he was denied the opportunity to bid on a particular shift while an allegedly similarly-situated white co-worker was allowed to bid. *See, e.g.,* Dkt. No. 10 at 2. As to this claim, Plaintiff alleges disparate treatment, but he has not alleged racial discrimination under Title VII (or under Chapter 21).

"To establish a discrimination claim under Title VII ... , a plaintiff must prove that he or she was subject to an 'adverse employment action' – a judicially-coined term referring to an employment decision that affects the terms and conditions of employment ... such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (citations omitted); *see also Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281-82 (5th Cir. 2004) ("[A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." (citation and internal quotation marks omitted)); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (the antidiscrimination provision of Title VII "explicitly limit[s] the scope of that provision to actions that affect employment or alter the conditions of the workplace")); *Brooks v. Firestone Polymers, LLC*, No. 1:12-cv-325, ___ F. Supp. 3d ____, 2014 WL 5088657, at *8 (E.D. Tex. Oct. 8, 2014) ("Title VII was only designed to address *ultimate* employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." (citation and

internal quotation marks omitted; emphasis in original)).

The denial of a change in work hours (or more specifically here, the denial of an opportunity to apply for a change in work hours), without more, is not an adverse employment action. *See, e.g., Mylett v. City of Corpus Christi*, 97 F. App'x 473, 476 (5th Cir. 2004) ("It is well established that ... denial of particular shifts ... [is] not [an] adverse employment action[.]" (citing *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998)); *see also Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001) ("[A] shift change, without more, is not an adverse employment action."); *Broussard v. Lafayette Consol. Gov't*, Civil Action No. 6:13-cv-2872, 2014 WL 6862983, at *5 (W.D. La. Dec. 3, 2014) ("[A] temporary transfer to the night shift, or merely changing the hours Broussard worked on the day shift, without more, does not constitute an adverse employment action."); *Johnson v. Tune*, No. 4:10-cv-124, 2011 WL 3299927, at *4 (E.D. Tex. Apr. 29, 2011) (the "decision to deny Plaintiff weekends off is not enough to allege an adverse employment action sufficient to state an actionable claim"); *Craven v. Texas Dep't of Crim. Justice, Institutional Div.*, 151 F. Supp. 2d 757, 766 (N.D. Tex. 2001) ("That Craven expressed a preference for the day shift is insufficient to conclude that denial of her transfer request was an adverse action." (footnote omitted)); *Jeffery v. Dallas Cnty. Med. Exam'r*, 37 F. Supp. 2d 525, 529 (N.D. Tex. 1999) ("Changing an employee's work schedule, hours, or increasing an employee's workload are merely administrative decisions and do not constitute the type of ultimate employment decisions contemplated by Title VII.").

<u>Plaintiff's termination claim</u>

Plaintiff's wrongful termination claim presents a closer question. And, although Defendant would like to classify the alleged remark made by a supervisor on April 5, 2013 as a "stray remark," Plaintiff has alleged enough for the Court to plausibly infer, at the pleadings stage, that his termination was based on his race. *Contra Sudduth v. Texas Health & Human Servs. Comm'n*, No. A-13-CA-918-SS, 2014 WL 1513969, at *3 (W.D. Tex. Apr. 16, 2014) (because "the only fact related to race in her Complaint is her allegation regarding an unidentified coworker's derogatory comment" made almost one year before her termination, which was also conduct which occurred more than 300 days prior to her filing a grievance with the EEOC, "[t]o the extent Sudduth intended to base her Title VII race discrimination claim on her July 31, 2012 termination, she has failed to allege any facts from which the Court can plausibly infer her termination was based on her race" (citing *Raj*, 714 F.3d at 331)).

Although Plaintiff's complaint, which includes his responses to the Court's interrogatories, could be read to limit the reason for his alleged wrongful termination to Defendant's failure to follow policy, *see* Dkt. No. 10 at 3, he also alleges that, in close proximity to his termination, a supervisor uttered a remark – set out above – which can be inferred to allege wrongful termination based on race. As Defendant sets out in its reply,

> [f]or comments in the workplace to provide sufficient evidence of discrimination, to overcome the stay remark doctrine, the comments must be: (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.

Dkt. No. 22 at 5 (citing *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010); *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)).

For purposes of deciding whether Plaintiff's claims should be dismissed on the pleadings, all four factors seem to apply. Defendant attempts to limit them, particularly the fourth factor, to the shift-bid issue. But such a narrow view of allegations made by a *pro se* litigant is inconsistent with settled law that "*pro se* pleadings must be liberally construed to prevent the loss of rights due to inartful expression." *Marshall v. Eadison*, No. Civ.A. 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. Feb.12, 2014) (per curiam) (a court has a "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney").

Even if the undersigned accepted Defendant's position as to the interpretation of the wrongful termination allegation, "a *pro se* plaintiff ordinarily should be given 'every opportunity' to state a possible claim for relief." *Muthukumar*, 2010 WL 5287530, at *2 (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1998)). "Thus, before a court dismisses a complaint under Rule 12(b)(6) for failure to state a claim, a pro se plaintiff should be given an opportunity to amend." *Id.* (citing *Barowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir.1998) (per curiam)); *cf. Walls v. Panetta*, No. 5:12-cv-52, 2012 WL 6086226, at *3 (E.D. Tex. Dec. 6, 2012) (in which plaintiff was represented by counsel, "the Court agree[d] with Defendant that the singular pleaded fact of a stray remark does not raise a right to relief as required to avoid dismissal

pursuant to *Twombly* and *Iqbal*, [but] note[d], as did the Magistrate Judge, Plaintiff has not had the opportunity to amend.... [T]he Court is not inclined to dismiss Plaintiff's retaliation claim without allowing Plaintiff an opportunity to amend his original complaint. The Court is not convinced such an opportunity would be futile.").

Relatedly, the Court should reject Defendant's argument that Plaintiff's Chapter 21 (state law) claims are barred by limitations. *See* Dkt. No. 22 at 3-4. Defendant claims that, because Plaintiff's EEOC complaint was filed on September 18, 2013 – more than 180 days after the shift-bid denial in February 2013 – his state law claims are barred under Texas law. *See id.*; *see also Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 738-39 (S.D. Tex. 2014) ("A claimant aggrieved by an illegitimate employment action must file a complaint ... within 180 days of the alleged discriminatory action. [This prerequisite] is both mandatory and jurisdictional." (citing TEX. LABOR CODE § 21.202(A); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996)). As stated above, for present purposes, the Court should not narrowly view Plaintiff's allegations to mean that the sole illegitimate employment action occurred in February 2013. And, because the alleged wrongful termination occurred on April 5, 2013, less than 180 days before Plaintiff filed his EEOC complaint, the Court should allow the Chapter 21 claims to proceed in tandem with the Title VII claims.

**Recommendation**

Defendant's motion to dismiss [Dkt. No. 16] should be granted in part and denied in part. Plaintiff's claim that he was discriminated against with regard to the opportunity to bid on a particular shift should be dismissed with prejudice. But

Plaintiff's claim that he was terminated on the basis of his race should be allowed to proceed.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 30, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE